IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 5, 2003 Session

## IN RE: ESTATE OF ELIZABETH A. HAYNES
## KENNETH HUGHES, ET UX. V. ESTATE OF ELIZABETH A. HAYNES

**A Direct Appeal from the Probate Court for Franklin County**
**No. Unknown      The Honorable Floyd Don Davis, Judge**

_____

**No. M2002-01896-COA-R3-CV - Filed September 4, 2003**

_____

This appeal involves a claim filed against an estate for recovery for personal services rendered by claimants, husband and wife, to the decedent. The probate court granted the claim. Estate appeals. We reverse.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Probate Court Reversed and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and HOLLY M. KIRBY, J., joined.

Mark Stewart, Winchester, For Appellant, Estate of Elizabeth A. Haynes

Mickey Hall, Winchester, For Appellees, Kenneth Hughes and Elaine Hughes

**OPINION**

This is an action to recover compensation from an estate for personal services rendered to the decedent. On September 26, 2001, Elizabeth A. Haynes ("Ms. Haynes," or "Decedent") died testate at the age of 96 and her will was admitted to probate by order dated September 27, 2001. For several years prior to her death, Kenneth Hughes ("Mr. Hughes") and his wife, Elaine Hughes ("Mrs. Hughes," and together with Mr. Hughes, "Plaintiffs," or "Appellees"), had done various jobs for Ms. Haynes such as maintenance and repair of her heating system, daily meals, driving, gardening, and general maintenance work. On February 1, 2002, Mr. and Mrs. Hughes filed a Claim against the Estate of Elizabeth A. Haynes ("Estate," "Defendant," or "Appellant"). The Claim reads, in relevant part, as follows:

> 2. Nature of Claim. Claimants allege the decedent was indebted to claimants by reason of services provided to decedent by the

claimants, as a statement signed by the decedent that is attached to this claim attests.

3. Amount of Claim. Claimants make claim for $150,000.00. No payment has been received since decedent's death.

As an attachment to their claim, Appellees filed a "statement," written by Mr. Hughes, signed by Ms. Haynes, and witnessed by Virginia Kochans, which reads as follows:

Date Aug. 25 = 2001

Kenneth,

After I am gone I want you [and] Elaine to be paid $150,000 dollars for all the things you have done for me over the years and haven't been paid for.

I also want Wilson Jones to have 50,000 dollars for all things he has done and wasn't sufficiently paid for. In addition to will.

I want you [and] Elaine to have Mickey my dog and enough money to take care of her.

You have been better to me than my own relatives. I couldn't [have] made it without you.

Elizabeth A. Haynes /S/          Virginia Kochans /S/
                                 Witness

Kenneth Hughes /S/

A hearing on Appellees' claim was held in the Probate Court of Franklin County, Tennessee on July 8, 2002. An Order was entered on July 12, 2002, which reads, in relevant part, as follows:

This cause was heard on July 8, 2002 on a claim for service rendered. The Court heard several witnesses and arguments of counsel. The Court finds as follows:

1. Exhibit #1 is a writing signed by Miss Haynes with witnesses. This writing proposed to acknowledge $150,000 owing to Mr. & Mrs. Kenneth Hughes. This writing also proposed to have Mrs. Kenneth Hughes have and take care of her dog, a most prized possession of Miss Haynes.

2. Plaintiff and plaintiff's witnesses testified about daily visits and services performed for Miss Haynes over several years.

3. Value of this service was valued at $80,000 to $85,000 by Mr. Hughes, and $75,000 to $80,000 by Mrs. Hughes.

4. Defendant's witnesses agreed that the plaintiffs were at the home on a regular bases. Most witnesses testified that the Hughes performed services for Miss Haynes on a daily basis.

5. Mr. Taylor, a witness for the defendant testified that he saw the Hughes family at the house, but did not recall seeing any work performed by the Hughes family.

6. Mr. Taylor verified Mr. Hughes was concerned about treatment and medication that was given to Miss Haynes. The employee was terminated.

7. No one from the defendant contested the value of services rendered by Mr. and Mrs. Hughes.

8. None of the beneficiaries for the estate were present in court or voiced any objection to the claim of Mr. and Mrs. Hughes.

9. That services were rendered by Mr. and Mrs. Hughes to the estate of Miss Haynes.

10. That exhibit #1 is confirmation of Miss Haynes' desire to pay Mr. and Mrs. Hughes.

It is therefore ORDERED, ADJUDGED AND DECREED that Kenneth Hughes and wife Elaine Hughes shall have and recover from the Estate of Miss Elizabeth Haynes for services rendered in the amount of $75,000/Seventy-Five Thousand Dollars plus the cost.

Therefore a judgment of $75,000 is entered against the estate of Elizabeth A. Haynes for which execution may issue if necessary.

The Estate appeals from this Order and raises one issue for our review, as stated in its brief:

Whether the trial court erred as a matter of law in its award of $75,000.00 for services rendered, in the claim of Kenneth Hughes against the Estate of Elizabeth A. Haynes.

The Appellees raise the following, additional issue for our review:

The trial court erred in setting the value of
the services rendered at $75,000

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. ***See*** Tenn. R. App. P. 13(d).

**Whether the trial court erred as a matter of law in its
award of $75,000.00 for services rendered, in the claim of
Kenneth Hughes against the Estate of Elizabeth A. Haynes**

The law in Tennessee is well settled on claims against an estate for services rendered to a decedent:

> In asserting a claim against an estate for services rendered the decedent, the cause of action necessarily is based upon either contract or quasi contract.... To bring a contract into existence there must be an offer and an acceptance of that offer. The offer and acceptance may be expressed or implied from the parties' conduct....

> Contracts implied in fact arise under circumstances which, according to the ordinary course of dealing and common understanding of men, show a mutual intention to contract. Such an agreement may result as a legal inference from the facts and circumstances of the case....

> In order to make out an implied contract for the rendition of services, facts and circumstances must be shown which amount to a request for services, which is the offer to contract, and the performance of the requested services, which is the acceptance of the offer....

> As to services performed by a member of a family on behalf of another member of the same family, there is a presumption, which grows weaker as the relationship recedes, that the services are rendered gratuitously, from motives of affection and duty, and to entitle one in that situation to recover compensation therefor, the burden is upon them to overcome the presumption by showing either an expressed contract or such exceptional facts and circumstances as will establish an intention on the part to charge and on the other part to pay, notwithstanding the relationship of kinship....

-4-

Where one renders services to another in the hope or expectation of a legacy, devise, or other provision by will for his benefit, without any contract, express or implied, but relying solely upon the generosity of the person for whom such services were rendered, he cannot recover for such services because of the failure of such person to make such testamentary provision in his behalf....

Therefore, *if* the plaintiffs establish that the decedent expressly or impliedly requested the services, *and if* plaintiffs prove that they rendered those services with the expectation that they were to be paid in some manner for those services, then a contract is made out entitling the plaintiffs to recover against the estate for the reasonable value of those services. This contract must be proven in the face of the 'Dead Man's statute (T.C.A. 24-1-203) and the hearsay rule.

*Cobble v. McCamey*, 790 S.W.2d 279, 281-82 (Tenn. Ct. App. 1989) (emphasis in original; citations and quotations omitted)

We note that all parties to this suit agree that the August 25, 2001 writing satisfied neither the statutory requirements for will codicils nor the requirements for an express contract. Consequently, Mr. and Mrs. Hughes proceeded on the theory of quasi contract in their claim against the Estate. In addition, although Mr. Hughes, at several points in his testimony, mentioned that Ms. Haynes was like a mother to him, we note that the Hughes were not related by either blood or marriage to Ms. Haynes. Therefore, there is no presumption that the services were performed gratuitously.

As stated above, in order to make out their claim for compensation for services rendered to Ms. Haynes on the grounds of quasi contract, Mr. and Mrs. Hughes must satisfy two criteria: (1) that Ms. Haynes expressly or impliedly requested the services and (2) that Mr. and Mrs. Hughes performed those services with the expectation that they were to be paid in some manner.

Turning to the record in this case, there is ample evidence to support a finding that Mr. and Mrs. Hughes performed numerous tasks for Ms. Haynes from 1993 until her death in September 2001. We also find that there is sufficient evidence to support a finding that Ms. Haynes either expressly or impliedly requested these services. Mr. Hughes testified, in relevant part, as follows:

Q. When [Ms. Haynes] had that new heater put in, did you handle all the details of having it done?

A. She [Ms. Haynes] asked me to recommend who and to come and oversee it and I did...

Elaine Hughes also testified concerning Ms. Haynes requests as follows:

> Q. ...And were you [Mrs. Hughes] aware that he [Mr. Hughes] worked on the furnace all those times?
>
> A. Oh, yes, because say if he wasn't there–her [Ms. Haynes'] little hyper voice–you know, she [Ms. Haynes] would want him [Mr. Hughes] to come over there as soon as he got in.

Brenda Farris, an acquaintance of Ms. Haynes and the Hughes, testified, in pertinent part, as follows:

> Q. All right. Do you [Ms. Farris] know what Ms. Haynes thought about these services [performed by Mr. and Mrs. Hughes]?
>
> A. She [Ms. Haynes] always told me that she didn't know what she'd do without Kenneth [Hughes].

Clayton Couch, an acquaintance of Ms. Haynes, also testified, in relevant part, as follows:

> ...I know she [Ms. Haynes] depended on him [Mr. Hughes] a lot because she told me she did and she thought the world of him and, you know, she really depended on him to do things for her and I know that he did do it.

There is no evidence in record to suggest that Ms. Haynes did not know that Mr. and Mrs. Hughes were performing these tasks nor is there any evidence to suggest that Ms. Haynes declined to accept help from the Hughes. Consequently, the evidence in this record does not preponderate against a finding that Ms. Haynes expressly, or at the very least impliedly, requested these services of Mr. and Mrs. Hughes.

The issue here is whether Mr. and Mrs. Hughes expected payment for these services at the time they were rendered. The record is replete with evidence that Ms. Haynes was very independent and did not like to be beholden to anyone. Consequently, she paid her bills in a timely manner. There is also evidence that Mr. and Mrs. Hughes received some payments at the time they rendered the services:

> A. [by Mr. Hughes] Well, everything that I done [sic] for her [Ms. Haynes] like working on the house and everything like that, she always paid me for.

Q. Uh-huh.

A. She always paid me because she said, "You've got expenses and you've got men to pay and everything." I was compensated for that. I worked on her buildings uptown. I worked on her buildings downtown. She had three or four houses over there and I worked on them. She had–

Q. You're admitting that the bigger jobs she paid you for.

A. Oh, yes, she always paid me.

On cross-examination, Mrs. Hughes testified, in relevant part, as follows:

Q. And isn't it a fact also that when you [Mrs. Hughes] went over there and took her [Ms. Haynes] food from time to time that she would pay you cash out of her purse, wouldn't she?

A. No.

Q. She never paid you?

A. She would give me $5, $10. She would say, "Take this and buy the grandbaby a toy" or something to that effect.

\*                          \*                          \*

Q. Okay, how much has she [Ms. Haynes] paid you [Mrs. Hughes]?

A. Like $15, $20...

There is no evidence in the record to dispute the fact that, when payment was expected, the Hugheses were compensated upon completion of the services. The undisputed testimony concerning Ms. Haynes' insistence on paying people for their services at the time they were rendered indicates that, if payment was expected, it was given at or near the time that the services were completed. Moreover, the note which was admitted into evidence supports an understanding that the services not paid for when rendered were rendered gratuitously. The note explicitly states that payment is to be made "*after*" Ms. Haynes' death for "the things you have done for me over the years and ***haven't been paid for.***" Any expectation of payment arose only sometime after the services were complete and not at the time of performing, as required under quasi-contract:

Q. Did you [Mr. Hughes and Ms. Haynes] finally have an understanding about there would be some payment for what you had done?

A. Right.

This testimony indicates that the Hugheses may have had some expectation for payment from the estate after Ms. Haynes' death. If the services were rendered in the hope or expectation of some provision in Ms. Haynes' will, and without any other contract for payment, there can be no recovery because of the failure of such testamentary provision. *See Cobble v. McCamey*, 790 S.W.2d 279, 281 (Tenn. Ct. App. 1989). Obviously, the note put into evidence does not satisfy the requirements for a testamentary disposition.

The evidence preponderates against the trial court's finding that the Hugheses were entitled to $75,000. We, therefore, pretermit the issue raised by Appellees concerning the amount of the claim.

The Order of the trial court granting Appellees' claim against the Estate is reversed, and the case is remanded to the probate court for such further proceedings as are necessary. Costs of this appeal are assessed against Appellees, Kenneth Hughes and Elaine Hughes.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.